* * * * * * * * * * *
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Baddour and the briefs and arguments of the parties. The appealing party has shown good ground to reconsider the evidence. Accordingly, the Full Commission reverses the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matter of law the following which were entered into by the parties in a pretrial agreement as:
 STIPULATIONS
1. All parties are properly before the Commission, and the Commission has jurisdiction of *Page 2 
the parties and the subject matter.
2. Employee is Rodney Johnson.
3. Employer is Urban Development, LLC.
4. The carrier on the risk at the time of the alleged injuries was Builder's Mutual.
5. Employer regularly employs three or more employees and is bound by the North Carolina Workers' Compensation Act. The employer-employee relationship existed between the employer and the employee on 07/26/03 and 10/25/03, the alleged dates of injury.
6. A Pretrial Agreement was admitted as Stipulated Exhibit 1.
7. Plaintiff's medical records, Industrial Commission forms, interrogatory responses, plaintiff's recorded statement, and payroll records were collectively marked and admitted as Stipulated Exhibit 2.
 * * * * * * * * * * *
Based upon all the evidence adduced from the record, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. Plaintiff, a 34-year old male at the time of the hearing before the Deputy Commissioner, began working for Urban Development, Inc. as a tractor trailer driver in January of 2003. Plaintiff was an independent contractor of Urban Development, Inc. from January through June 13, 2003. Plaintiff became an employee of Urban Development, Inc. as of June 13, 2003 and worked as a mechanic/maintenance person. Plaintiff's mechanic/maintenance job involved operating heavy equipment, driving tractor trailers, and contracting work out to subcontractors.
2. Plaintiff has an average weekly wage of $647.96 with a compensation rate of$431.97, *Page 3 
based on records submitted by defendant.
3. Plaintiff claims that he injured his back during his employment with defendant-employer in July of 2003 when he allegedly fell from a rock crusher approximately six or seven feet and landed on his back. Plaintiff is uncertain as to the exact date of his alleged July injury, but estimated the injury occurred around July 26, 2003. Plaintiff did not inform his employer of any fall and did not file a Form 18 regarding the July, 2003 incident until some seven months later on February 24, 2004. Plaintiff's initial Form 18 indicates an injury date of July 27, 2003, however, plaintiff filed an amended Form 18 on September 8, 2004 with a new date of injury of July 26, 2003. Plaintiff did not miss any time from work as a result of his alleged July, 2003 injury.
4. Plaintiff also indicated that he injured his back again in September of 2003 when he fell while pulling a hose during his employment with defendant-employer. Plaintiff did not miss any time from work or seek medical treatment for the alleged September incident. Plaintiff did not file a Form 18 and specifically noted that he was not making a claim for any alleged September of 2003 injury. Plaintiff's claim is limited only to a July, 2003 alleged injury and an October, 2003 injury.
5. Plaintiff further claimed that he injured his back again in October of 2003 while working with defendant-employer when he lifted a target plate out of a rock crushing machine. Plaintiff estimates that his lifting injury occurred on October 25, 2003. Plaintiff, again, made no complaint to his employer and did not file a Form 18 regarding this injury until some four months later on February 24, 2004.
6. Plaintiff's employment records indicate that plaintiff's last day of work with defendant-employer was October 21, 2003. The records further indicate that plaintiff was not present at work on July 26, 2003, July 27, 2003 or October 25, 2003, the dates of his alleged work-related injuries.
7. Plaintiff did not seek medical treatment for any alleged work-related injuries until he *Page 4 
reported to the UNC Hospitals Emergency Room on October 28, 2003, some three days after the last alleged injury. Plaintiff has treated with numerous physicians at UNC Hospitals for his alleged injuries since October 28, 2003 and has provided numerous accounts of when and how his injuries occurred. On October 28, 2003, plaintiff reported a fall on his left side approximately one month prior. On October 31, 2003, plaintiff returned to the UNC Hospitals Urgent Care complaining of neck pain. Records of plaintiff's visit indicate that plaintiff stated that his pain started three to four months prior to October 31, 2003. Plaintiff did not report an October 2003 work-related injury on either of the October 28, 2003 or October 31, 2003 hospital visits.
8. On November 8, 2003, plaintiff treated with Dr. Karin Mackay at UNC Hospitals for complaints of back and shoulder pain and reported a July of 2003 fall, a September of 2003 fall and a lifting incident which occurred two weeks prior to his visit. He reported progressive back pain since a July, 2003 fall. The November 8, 2003 record is inconsistent with plaintiff's prior accounts of his alleged work-related injuries.
9. On January 8, 2004, plaintiff treated with Dr. Mark Boulware of UNC Hospitals.
On that date, plaintiff reported a July of 2003 fall from a rock crusher and an October of 2003 injury which occurred while he was pulling a plate from a machine. Plaintiff did not report a September fall to Dr. Boulware.
10. Plaintiff's treatment at UNC Hospitals revealed normal objective findings but subjective complaints of pain. On January 8, 2004, Dr. Boulware indicated, "I do not feel an MRI is warranted at this time given no evidence of spinal cord involvement." Dr. Boulware testified that there is nothing objectively wrong with plaintiff and that he is not a surgical candidate. He testified that there is no objective basis for plaintiff to be out of work. Dr. Boulware did not issue an out-of-work note to *Page 5 
plaintiff at any time during his treatment.
11. Plaintiff underwent chiropractic treatment with Dr. Edward Desjarlais from November 11, 2003 through January 7, 2004. Dr. Desjarlais took plaintiff out of work from November 13, 2003 through January 9, 2004. When Dr. Desjarlais saw plaintiff on January 7, 2004, he did not extend plaintiff's time out of work.
12. Plaintiff again treated with UNC Hospitals on March 1, 2004. On that date, a record of plaintiff's visit with Dr. Wusirika indicates that plaintiff had a history of chronic back pain after an accident in July. No subsequent injuries were mentioned. An MRI of the lumbar spine dated March 23, 2004 revealed mild degenerative disk disease at L4-5 and L5-S1. On May 27, 2004, plaintiff presented for treatment with Dr. Wang of UNC Hospitals for complaints of low back pain. Plaintiff reported a July of 2003 injury to his back and another injury when he was lifting at work. Plaintiff did not report his alleged September of 2003 injury.
13. During the course of plaintiff's treatment, plaintiff exhibited drug-seeking behavior. Instead of reporting to his treating physician, Dr. Boulware, for control of his pain symptoms, plaintiff consistently sought medications from the UNC Hospitals Emergency Department and Urgent Care. Plaintiff initially presented to the UNC Hospitals Emergency Department for pain medications on April 23, 2004. He received ten Percocet on that date. Despite instructions to see his treating physician for medications, plaintiff continued to seek medications from the Emergency Department.
14. Between April 23, 2004 and June 24, 2004, plaintiff visited the Emergency Department seven times and visited Dr. Boulware once for the purpose of receiving medications. At each Emergency Department visit, plaintiff received at least ten Percocet, and one medical record indicates that plaintiff had taken more than 120 Percocet over the course of approximately one and one-half *Page 6 
weeks. During the time plaintiff was seeking pain medications from the Emergency Department, plaintiff began complaining of unsteady gait which was unsupported by objective findings. Plaintiff also began using a cane and a wheelchair. An MRI dated July 7, 2004 did not reveal any significant changes since plaintiff's last MRI in March of 2004.
15. After numerous instances of drug-seeking behavior, Dr. Boulware referred plaintiff to the UNC Hospitals Pain Clinic. Plaintiff began treating with Dr. Ives of the Pain Clinic on July 8, 2004. Dr. Ives altered plaintiff's prescriptions at that time. Plaintiff was required to enter into a contract as to a schedule for his medications. Plaintiff continued treating with Dr. Boulware and the Pain Clinic.
16. Plaintiff's medical records indicate that plaintiff experienced back pain prior to his alleged work-related injuries. A record dated January 7, 2001 indicates that plaintiff complained of low back pain for three to four days along with right flank pain. A July 15, 2001 record also reveals plaintiff's complaints of back cramping. On May 17, 2002, plaintiff reported low back pain to the UNC Hospitals Emergency Department. Plaintiff testified that any prior back pain he experienced was the result of his chlamydia. However, chlamydia does not cause back pain.
17. Plaintiff contends that he has experienced psychological problems as a result of his alleged work-related injuries. Plaintiff was referred for psychological treatment with Dr. Bernard Eaton and treated with Dr. Eaton on October 11, 2004, November 10, 2004 and January 10, 2005. Plaintiff was referred to Dr. Eaton by Wake County Mental Health/Human Services as a result of violence in his family and his relationship with his wife, not as a result of his alleged work-related injuries. Dr. Eaton diagnosed plaintiff with adjustment disorder with depressed mood. Dr. Eaton explained that, during his treatment of plaintiff, plaintiff was focused on his receipt of disability payments. Dr. Eaton indicated that plaintiff exhibited a personality disorder which pre-dated his alleged work-related injuries and that from *Page 7 
a psychiatric standpoint, plaintiff is not disabled.
18. Based upon the greater weight of the competent evidence of record, the undersigned find that plaintiff's testimony is not credible and that plaintiff did not sustain a compensable injury by accident or a specific traumatic incident in July of 2003 or October of 2003. Further, even if these events were found to have occurred, plaintiff did not timely report them, nor provide a reasonable excuse for not doing so. Consequently, defendants were prejudiced by not having an opportunity to timely investigate the alleged injuries or to direct medical care.
19. In addition, plaintiff's alleged psychological problems are not related to plaintiff's alleged work-related injuries. Therefore, any psychological problems plaintiff has experienced are not compensable.
 * * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. The greater weight of the competent evidence establishes that plaintiff did not experience a compensable injury by accident or a specific traumatic incident as a result of an incident in July, 2003 or in October, 2003. N.C. Gen. Stat. § 97-2(6).
2. Further, even if these incidents were found to have occurred, plaintiff did not timely report them nor provide a reasonable excuse for not doing so. Consequently, defendants were prejudiced by not having an opportunity to timely investigate these incidents and to direct medical care. N.C. Gen. Stat. § 97-22.
3. The greater weight of the evidence establishes that plaintiff's psychological condition is unrelated to any compensable injury and the treatment is, therefore, not compensable. N.C. Gen. Stat. *Page 8 
§ 97-25.
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
Plaintiff's claims are hereby DENIED.
This the 25th day of August 2006.
 S/____________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/____________________ BUCK LATTIMORE CHAIRMAN
DISSENTING WITHOUT WRITTEN OPINION:
 S/____________________ THOMAS J. BOLCH COMMISSIONER *Page 1